**SIGNED THIS: September 07, 2005**

_____
**THOMAS L. PERKINS
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY H. INNIS, | ) | No. 04-85143 |
| Debtor. | ) | |

**O P I N I O N**

Before the Court is the motion for turnover filed by Charles E. Covey, Chapter 7 Trustee (TRUSTEE), seeking the nonexempt portion of federal and state income tax refunds payable to the Debtor, Jeffrey H. Innis (DEBTOR), and his non-debtor spouse.

The DEBTOR, an employee of the U.S. Postal Service, filed an individual Chapter 7 petition on November 16, 2004. The Statement of Affairs disclosed that the DEBTOR'S earnings to date for 2004 were $39,000. The DEBTOR did not schedule any anticipated tax refunds on his schedule of personal property. While the DEBTOR was divorced on the date that he filed the petition, before the end of 2004, he married Leslie A. Ivey (LESLIE). After the first meeting of creditors, the TRUSTEE sought copies of the DEBTOR'S tax returns for 2004. According to the 2004 federal income tax return, the DEBTOR and

LESLIE, filing jointly, had total income of $36,490, consisting of the DEBTOR'S wages of $43,263 plus interest income of $14 less LESLIE'S partnership loss of $6,787.

The DEBTOR and LESLIE received a federal income tax refund in the amount of $4,820 and an Illinois state income tax refund of $447, which were subsequently disclosed on Amended Schedules B and C. In the amended schedules and in his response to the TRUSTEE'S motion, the DEBTOR asserts that only one-half of each refund is his property, the other half being owned by LESLIE. After prorating his one-half of the refunds through the filing date of November 16, 2004, the DEBTOR asserts that only the sum of $2,305 is property of his bankruptcy estate. Since he uses his entire wildcard exemption balance of $2,000 as afforded by 735 ILCS 5/12-1001(b) on the refunds, the DEBTOR concedes only that the TRUSTEE is entitled to be paid the nonexempt sum of $305.

Disputing LESLIE'S ownership of one-half of the refunds, the TRUSTEE filed a motion for turnover of the sum of $2,634.96, representing the prepetition portion of the total tax refunds, less the $2,000 exemption, noting that although the DEBTOR filed a joint return with LESLIE, only the DEBTOR had taxes withheld from his wages.[1] In support of his position that only one-half of the tax refunds are his property, the DEBTOR relies on Section 503(b)(1) of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/503(b)(1), which creates a rebuttable presumption that all property acquired by either spouse after marriage is marital property. A hearing was held on May 16, 2005, and the matter was taken under advisement. Both parties have filed briefs in support of their positions. The DEBTOR, in addition to relying upon the definition of marital property as

---

[1] Based on the filing date, the TRUSTEE calculates that 88% of the tax refunds are property of the estate.

2

evincing a legislative intent that each spouse acquires an equal interest in property acquired during their marriage, points out that $3,198 of the refund he received is directly attributable to LESLIE. The DEBTOR attaches a computation prepared by his accountant, computing the tax liabilities as if the DEBTOR and LESLIE had filed separate returns. According to that computation, the DEBTOR would have received a refund of only $1,382.[2]

It is well established that the prepetition portion of a tax refund, falling within the definition of "all legal or equitable interests of the debtor in property as of the commencement of the case," is property of the bankruptcy estate under Section 541(a)(1). *In re Moody*, 241 B.R. 238 (Bankr.M.D.Fla. 1999); *See Kokoszka v. Belford*, 417 U.S. 642, 648, 94 S.Ct. 2431, 2435, 41 L.Ed.2d 374 (1974) (tax refund property within meaning of Section 70(a)(5) of the Bankruptcy Act); *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).[3] That a debtor's rights in a tax refund are determined under state law is not subject to dispute. *In re WDH Howell, LLC*, 294 B.R. 613 (Bankr.D.N.J. 2003). However, because a federal tax refund is a creature of federal tax law, rights created thereunder cannot be ignored. *See, Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (general rule that property interests are defined by state law tempered by exception where "federal

---

[2] Support for the DEBTOR'S position can be found in *Matter of Crum*, 6 B.R. 138 (Bankr.M.D.Fla. 1980), where the court, absent proof that the non-debtor spouse's business losses contributed to the refund received by the debtor, apportioned the refund based upon the tax withheld from each spouse, but suggested that quantification by the debtor would have changed that result. The court in *In re Muzzy*, 1986 WL 713377 (Bankr.D.N.D. 1986), finding that the losses incurred by the nondebtor spouse's business as well as the credits taken as a result of that business, resulted in an increased refund, held that the trustee was entitled to a reduced share of the joint refund. In so holding, the court noted that the loss would have otherwise been available to the nondebtor spouse in later years.

[3] The legislative history to the Bankruptcy Code makes it clear that the result reached under prior law would be unchanged:

> The result of [*Segal*] is followed, and the right to a refund is property of the estate." S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6323.

3

interest" may require a "different result").

Courts have taken differing approaches in determining the portion of a tax refund to which a debtor's estate is entitled when a joint tax return has been filed with a nondebtor spouse. The majority of courts considering the issue have apportioned the tax refund according to the income tax withheld from each taxpayer. *In re Kleinfeldt*, 287 B.R. 291 (10th Cir.BAP 2002); *In re Smith*, 310 B.R. 320 (Bankr.N.D.Ohio 2004); *WDH Howell, supra; In re Lyall,* 191 B.R. 78 (E.D.Va. 1996).[4] Regarding the refund of excess withholding tax as a repayment of earnings from employment, those courts allocate the refund according to each spouse's contribution to the tax withholdings. Primary significance is placed upon the general rule that the filing of a joint return does not create an interest in one spouse in the other spouse's income or otherwise alter property rights as between the taxpayers. *In re Wetteroff*, 453 F.2d 544 (8th Cir. 1972). The TRUSTEE urges the Court to adopt this approach.

Other courts have adopted a different position, holding that a tax refund should be allocated between spouses based upon the income earned by each spouse. *In re Verill*, 17 B.R. 652 (Bankr.D.Md. 1982); *In re Kestner*, 9 B.R. 334 (Bankr.E.D.Va. 1981). These positions can cut both ways, sometimes giving the bankruptcy estate a larger share of the refund, sometimes not, depending upon whether the debtor spouse or the non-filing spouse had

---

[4] The court in *Lyall*, 191 B.R. at 86, suggested another alternative:

> In actuality, the most exact method of determining the refund to which a husband and wife would be entitled had they filed individually is to figure their tax liability as if they had filed individually, divide any benefit from a joint filing equally between the two, and then ascertain the amount of the refund due each. Although this method is accurate, it is also time-consuming and basically unnecessary....

Characterizing that method as accurate but time-consuming, the court rejected it in favor of the majority rule, finding that it struck a sensible balance between absolute precision and the need for equity and efficiency.

4

greater income or withholdings.

Still other courts have adopted a third approach, advocated by the DEBTOR, that incorporates a marital partnership theory, holding that the refund is presumed to be split equally between the spouses, without regard to their individual earnings or withholdings. *In re Barrow,* 306 B.R. 28 (Bankr.W.D.N.Y. 2004); *In re Aldrich*, 250 B.R. 907 (Bankr.W.D. Tenn. 2000). The *Borrow* and *Aldrich* courts rejected the decisions allocating tax refunds on the basis of income earned or taxes withheld. The *Barrow* court, in particular, makes the following well-reasoned analysis as to why both approaches are ill-founded:

> I disagree with those courts that allocate refunds in proportion either to income or amount of withholdings. The reality of the Internal Revenue Code is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings. For many taxpayers, a significant portion of the refund is attributable not to these factors, but to any of a number of credits, such as the child tax credit or credits for education or for child and dependent care expenses. In many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use that exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income. For many married couples, a joint filing permits use of a more favorable tax table. The results are most dramatically illustrated when one spouse earns the entire family income. In that instance, because a spouse without income has joined in signing the tax return, the family may pay significantly less tax, as compared to the tax that would have accrued to a married person filing separately but with identical income and withholdings. It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse.

306 B.R. at 30-31. This Court agrees with that analysis. Although addressed in the context of an exemption claim, rather than a property of the estate determination, the same result, with similar analysis, has been reached in *In re Hejmowski,* 296 B.R. 645 (Bankr.W.D.N.Y. 2003) and *Bass v. Hall,* 79 B.R. 653 (W.D.Va. 1987), both holding that a refund from a joint

5

tax return is presumed to be owned equally by the taxpayer spouses.

Underlying the equal ownership approach is the imposition of joint and several liability for any tax deficiency resulting from the filing of a joint income tax return. *See* 26 U.S.C. § 6013(d)(3). Attendant to the burden of tax liability should be the benefit of sharing in a tax refund. *Aldrich,* 250 B.R. at 912; *Barrow,* 306 B.R. at 31. Another factor relied upon is the equitable distribution of assets called for in marital dissolution proceedings, in recognition of a spouse's noneconomic contributions to the family. *Aldrich,* 250 B.R. at 912; *Bass v. Hall*, 79 B.R. at 656-57. In addition, most non-community property states have statutes in force that render post-marriage tax refunds "marital property." *Hejmowski,* 296 B.R. at 649. Thus, under the general rule that husbands and wives own their jointly-owned assets in equal shares, joint tax refunds should be allocated one-half to each spouse. *Id* at 650; *Bass v. Hall,* 79 B.R. at 656.

This issue has not been addressed by the Seventh Circuit Court of Appeals or by any district court or bankruptcy court applying Illinois law. Illinois courts recognize, however, that the concept of marriage as a shared partnership is a broad principle that is now widely accepted and used by courts as part of their decisional framework. *In re Marriage of Selinger,* 351 Ill.App.3d 611, 617, 814 N.E.2d 152, 286 Ill.Dec. 502 (Ill.App. 4 Dist. 2004) (recognizing that marriage is a partnership, both morally and financially); *accord, In re Marriage of Keip,* 332 Ill.App.3d 876, 773 N.E.2d 1227, 266 Ill.Dec. 157 (Ill.App. 5 Dist. 2002); *In re Marriage of Morris,* 266 Ill.App.3d 277, 640 N.E.2d 344, 203 Ill.Dec. 685 (Ill.App. 2 Dist. 1994) (marriage is a "shared enterprise" or a "functional partnership"); *In re Marriage of*

*Mahaffey,* 206 Ill.App.3d 859, 564 N.E.2d 1300, 151 Ill.Dec. 638 (Ill.App. 1 Dist. 1990).

Although the statutory provision upon which the DEBTOR relies as establishing a rebuttable presumption that the tax refund, received post-marriage, is marital property, is expressly limited in its application to the distribution of property in a proceeding for dissolution of marriage, 750 ILCS 5/503(b)(1), the Court believes that the concept of marital property is properly viewed as a reflection of the public policy of the State of Illinois that marriage is a shared partnership.[5] It follows that where the right to an income tax refund accrues during the parties' marriage, the refund is treated as marital property without regard to whose income or other tax attributes generated the refund. *In re Marriage of Ormiston,* 168 Ill.App.3d 1016, 523 N.E.2d 148, 119 Ill.Dec. 680 (Ill.App. 1 Dist. 1988). Moreover, the DEBTOR and LESLIE voluntarily chose to file a joint tax return, rendering them jointly liable for any tax deficiency, and giving them presumptive joint ownership of any refund.[6]

Neither is it material that the marriage occurred postpetition, in the last month of the tax year. At the time his Chapter 7 petition was filed in November, the DEBTOR'S interest in the tax refund for the year ending December 31 can best be characterized as only an unliquidated expectancy. The fact that a refund is not finalized until the end of the year, however, does not impact its inclusion in the estate. Events taking place after the filing of the petition, including a subsequent marriage, can either enhance or eliminate the amount ultimately computed to be due. The artificiality and pointlessness of attempting to

---

[5] Section 503(a) contains several exceptions to the marital property presumption such as property acquired by inheritance and property excluded by a prenuptial or other agreement of the parties. None of the exceptions apply to the tax refund in question.

[6] Even though they married in December, they are permitted, but not compelled, to file a joint return for the entire year in which the marriage occurred. 26 U.S.C. § 6013(d)(1)(A).

7

precisely determine the DEBTOR'S interest in a joint tax refund received for a tax year which closes after the bankruptcy petition is filed through hypothetical alternative tax return scenarios has been criticized as inconsistent with the Internal Revenue Code and the Bankruptcy Code, a view with which this Court agrees. *See, In re Bading,* 154 B.R. 687 (Bankr.W.D.Tex. 1993). It is also inconsistent with the regular routine of Illinois courts to divide marital property based on the equities of each case, rather than pursuant to any formulaic approach such as that advocated by the TRUSTEE. For these reasons, as well as those set forth in *Barrow,* this Court is of the view that crafting a rule that requires the parties and the courts to delve into the gnarly minutiae of hypothetical tax returns, on a case by case basis, would be a mistake.

After considering the various approaches to the issue, this Court finds most persuasive the reasoning of *Barrow* and *Aldrich,* with one modification. Adopting a rebuttable presumption that each taxpayer spouse owns a one-half interest in a joint tax refund, *Barrow* permitted the consideration of rebuttal evidence in the form of the history of the spouses' financial independence. Among the relevant factors identified by the court in *Barrow* are (1) whether the taxpayers maintained separate bank accounts; (2) whether the taxpayers have filed joint returns in the past; (3) how the parties divvied up past refund checks; and (4) whether the parties own assets individually and are otherwise financially independent. Likewise, the *Aldrich* court determined that the analysis must be made on a case by case basis, considering the totality of the particular facts and circumstances, with a particular focus on whether the non-income producing, non-filing spouse makes

8

"substantial contributions to the family." *Alrich,* 250 B.R. at 912.[7]

This Court respectfully disagrees with *Barrow* and *Aldrich* to the extent that those courts hold that the presumption of equal ownership of a joint tax refund should be limited and may be rebutted by evidence of the couple's history and habits with respect to their finances or of the relative contributions of each to the welfare of the family. In the absence of a domestic relations court order or an enforceable, written, prepetition contract between the spouses designating alternative ownership of the refund, it is difficult to see why any inquiry need be made beyond the fact that the parties voluntarily elected to file a joint return. This Court believes that fact is a better indicator of the parties' intent as to ownership of the refund than any historical reference to past behavior concerning other property. As long as the couple was married as of December 31 and filed a joint return, any refund should be treated as equally apportioned marital property, with the bankruptcy estate of either single-filer spouse claiming a fifty percent (50%) share, subject only to the possibility of a different ownership allocation on account of a domestic relations court order or an enforceable, written, prepetition contract between the parties such as a prenuptial agreement.[8] *See, In re Marriage of Jelinek,* 244 Ill.App.3d 496, 613 N.E.2d 1284, 184 Ill.Dec. 692 (Ill.App. 1 Dist. 1993) (In Illinois, antenuptial agreement must be in writing to be enforceable).

Moreover, limiting the rebuttal inquiry to domestic relations court orders and enforceable contracts serves several important purposes. First, it provides a clear rule that

---

[7] Although the court in *Aldrich* adopted the presumption of equal ownership, following *Bass v. Hall,* the court limited its holding to cases involving a homemaker who makes substantial noneconomic contributions to the family.

[8] It must be recognized, however, that a transfer of a debtor's interest in a tax refund may be avoidable by the trustee in bankruptcy.

is easy to understand and apply by the parties and the courts. Second, it eliminates uncertainty and provides guidance, in advance, to debtors and their attorneys that allows for effective prebankruptcy planning.[9] Third, it eliminates much of the litigation that would otherwise be needed to resolve the issue. Fourth, it simplifies the issues in the litigation that may still be necessary by eliminating the difficult question of the intent of the spouses in the absence of a written agreement. Fifth, by eliminating the question of intent, it greatly reduces the opportunity for parties to exaggerate or fabricate evidence in an effort to vest ownership of the refund in the nonfiling spouse. Additionally, and of no less importance, limiting rebuttal to contracts and court orders is consistent with Illinois' marital property provision which excludes from "marital property" any "property excluded by valid agreement of the parties" and "any judgment or property obtained by judgment awarded to a spouse from the other spouse." 750 ILCS 5/503(a).

Illinois state income tax returns follow the taxpayer's federal return hand in glove. There is no reason to treat the state refund differently from the federal refund and the reasoning and result reached by the Court will apply to the state refund as well.

For these reasons, the Court holds that where a debtor and a non-debtor spouse file a joint tax return, any refund is presumed to be jointly owned in equal portion by each spouse, so that one-half of the refund becomes property of the debtor spouse's bankruptcy estate. This presumption is subject to rebuttal by proof of a court order enforceable between the spouses or by proof of a prenuptial or other written prepetition agreement of the parties, that provides for a different allocation of ownership of the refund. Such

---

[9] When developing common law rules of general application, it is appropriate for courts to consider the interests of certainty and ease of application. *Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 883 F.Supp. 1101 (E.D.Mich. 1995).

10

rebuttal evidence will be considered on a case by case basis. No such rebuttal evidence was presented here and the presumption of equal ownership means that $2,305 of the refunds is property of the estate. Since $2,000 of that amount is exempt, the TRUSTEE'S motion for turnover is granted as to the sum of $305.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###